# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| **MICHAEL J GRANGER,**<br>　　　　　　Plaintiff,<br><br>　　　v.<br><br><br>**GRAYBAR ELECTRIC COMPANY, INC.,**<br>　　　Defendants. | CIVIL ACTION<br>NO. 16-40165-TSH |

## ORDER AND MEMORANDUM OF DECISION
### September 28, 2018

**HILLMAN, D.J.**

### Background

Michael J. Granger ("Plaintiff" or "Granger") has filed suit against Graybar Electric Company, Inc. ("Defendant" or "Graybar") asserting a claim for gender discrimination in violation of Mass.Gen.L. ch. 151B ("Chapter 151B"). Essentially, Granger asserts that his termination after a confrontation with a female co-worker was the result of gender bias. This Order addresses the Defendant's Motion For Summary Judgment (Docket No. 24). For the following reasons, that motion is granted.

**Facts**

Plaintiff's Employment History with Granger

Granger was employed with Graybar at its Worcester, Massachusetts location from September 2001 until June 2015, except for a brief period in 2009 when he was laid off. Granger was terminated on June 3, 2015; the incident for which he was terminated occurred on June 2, 2015. Granger did not experience any incidents of discrimination prior to incident which led to the termination of his employment. In 2015, Graybar's Worcester location had approximately twenty employees, of whom only two were women.

Granger's primarily employed as a counter sales representative ("CSR"), and also occasionally assisted in the warehouse. In 2012, Granger's *overall* performance was rated "some improvement needed." He received a rating of "meets" on the criterion of "demonstrates the skills necessary to be successful in his/her role." Overall, Granger received "meets" criteria on two criteria and "some improvement needed" on four criteria. In 2013 and 2014, Granger's *overall* performance was rated "inconsistent." In 2013 he received a "solid" rating for four out of nine criteria, and "inconsistent" on the other five criteria. The "overall summary" that year also indicated that he was "above average in orders, line items and sales among counter representatives in the district," but that his productivity had decreased and he needed to pay more attention to reduce errors.

On at least fifteen separate occasions from 2012 until his termination in June 2015, Granger made processing errors or initiated arguments with coworkers, resulting in counseling from managers, and in one case, a performance improvement plan. During the period from 2014-2015, Granger received "Round of Applause" or "High Five" commendations six times from his co-workers and managers as part of Graybar's "Cause for Applause" employee recognition

program, including twice from Joe Donahue (regional human resources director), once from John Shepherd (a manager) and once from a female co-worker. "Round of Applause" are not performance evaluations, but are part of a computer generated employee recognition program that recognizes completion of training, birthdays, or holidays.

<u>Kelly Strom's Employment History with Granger</u>

Kelly Strom ("Strom") was employed as branch administrator for the Graybar location in Worcester.  Strom's job duties included regularly working with CSRs, including billing issues, creation of customer accounts, and the receipt of inventory in the warehouse. Strom does not recall ever receiving a negative performance review.  Prior to his termination, Strom regularly worked with Granger.  Prior to the June 2, 2015 incident that led to Granger's employment being terminated, neither Strom nor Granger had expressed any issues with their relationship.

<u>Graybar's Workplace Policies</u>

Graybar employees receive training on Graybar's personnel policies, also known as "General Instructions." Graybar requires that its employees read, review, and acknowledge their understanding of various discrimination and ethics policies each year. Graybar's General Instruction 8 ("GI ") states that Graybar employees are required to "treat everyone with dignity and not engage in or tolerate harassment or discrimination of any kind, especially based on race, color, ethnicity, religion, gender, age, disability, or veteran or marital status."  G.I. 8 requires employees to report to their supervisor or manager "any violations or possible violations" of G.I. 8 and "to seek guidance from a supervisor" when there are questions as to the best course of action to take. G.I. 8 also states in part, "Any such dealings [between Graybar employees] shall be undertaken with professionalism and in a manner which will not prove an embarrassment to

[Graybar] or damage its reputation." G.I. 8 provides that violations of the Code of Business Conduct and Ethics "will result in disciplinary action, which *may* include termination of employment." (emphasis added).

Granger had been trained on G.I. 8, and had signed an acknowledgement that he had read and understood the provisions therein. Graybar considered Granger's actions with Strom to be in violation of G.I. 8, particularly his repeated use of the word "bitch" Granger knew his use of the word "bitch" was unprofessional, undignified, and could "prove an embarrassment to the company or damage its reputation," and that violations would result in disciplinary action, up to termination of employment.

Granger also knew that his behavior on June 2, 2015 was in violation of General Instruction 3.6 ("G.I. 6"), which prohibits workplace violence, intimidation, and threats. Granger had been trained on Graybar's G.I. 3.6, and understood that his violation of the Workplace Violence policy could result in immediate termination.

Additionally, Granger had been trained on Graybar General Instruction 3.3 ("G.I. 3.3), which prohibits discrimination and harassment in the workplace. He knew use of the word "bitch" and the phrase "fucking bitch" in reference to Strom was a violation of G.I. 3.3. Granger understood that a violation of G.I. 3.3 could result in his immediate termination for gross misconduct. Granger was aware of the mandatory reporting requirements of the policy, requiring Graybar employees to report any instances of discrimination or harassment. However, Granger never reported to Graybar that he was the victim of discrimination to Graybar.

<u>The Events of June 2, 2015</u>

On June 1, 2015, Strom had belittled Granger in connection with a customer service issue. Granger was insulted by Strom's comments and conduct towards him. Granger thought

4

Strom's behavior was out of character as the two had no previous disputes, He assumed he could discuss his feelings with her on another occasion and work it out.

Granger was aware that Strom took breaks in the breakroom each day between 4:00 and 4:15 p.m. On the afternoon of June 2, 2015 between 4:00 and 4:15 p.m., Granger initiated a confrontation with Strom while she was alone in the breakroom of the Worcester branch. Granger was standing a distance of approximately four feet away from Strom. Granger is 5'11" and 242 pounds; Ms. Strom is 5'6" and slightly built. Granger wanted to discuss Strom's behavior from the day before. However, Strom was dismissive, interrupted him and refused to speak to him. Both individuals started yelling at each other.

During the course of the confrontation, Granger called Strom a "bitch" multiple times. More specifically, he said things like "You're acting like a bitch," and she was "being a fucking bitch." Granger called Strom a "fucking bitch" at least four times. During the confrontation, Strom requested more than once that Granger leave the breakroom. Nevertheless, Granger refused to leave. Strom also told Granger she did not want to talk to him and tried to leave the room to get away from him. Ultimately, she called for managers John Shepherd ("Shepherd") and Bryan Hayes ("Hayes") to intercede. Granger was angry during the confrontation, and acknowledges that the argument was "heated" and "out of control." He did not leave the breakroom because he was "mad." Granger's yelling was loud enough to be heard by co-workers.

Shepherd and Hayes eventually arrived in the breakroom. Granger called Strom a "fucking bitch" multiple times after Shepherd and Hayes arrived. Shepherd and Hayes attempted to separate Granger and Strom-- they directed the two out of the breakroom through separate doors. As Strom began to leave, Granger continued to shout at her, calling her a "fucking bitch."

5

She then attempted to reverse direction back towards him. Shepherd and Hayes physically stopped her from going any further. According to Granger, Strom raised a clenched fist near Granger's face and angrily yelled, "I am so mad I could punch you in the fucking head."[1] According to Shepherd and Hayes Strom moved back towards Granger while making some kind of hand gesture and that she appeared to be frustrated. They did not hear her make any threats to Granger. Granger now claims to have felt threatened by Strom's conduct, however, he never reported feeling threatened Graybar after the incident.

Granger did not immediately leave the breakroom, but he did eventually comply with Hayes' order and followed him to the warehouse. By Granger's own estimate, once he was in the warehouse, it took him five minutes to calm down. While in the warehouse, and in front of Shepherd and Hayes, Granger again said "she's a fucking bitch" in reference to Strom. After separating Granger and Strom, Shepherd and Hayes spoke with both of them. Shepherd and Hayes spoke with Granger to explain to him how he cannot use the language he did and act so inappropriately at work. Shepherd spoke with Strom to get her side of the story. Shepherd told Strom that she and Granger had told him the same thing. Strom had told Shepherd that she had not made any threats towards Granger, that he had repeatedly called her a fucking bitch, and refused to leave her alone.

Shepherd and Hayes contacted Joe Donahue, Graybar's regional human resources director to inquire about whether their decision to terminate Granger was appropriate. They did not ask about whether Strom should be disciplined. Shepherd and Hayes did not report to Donahue that Granger felt threatened by Strom. They did report that Granger did not complain to

---

[1] This alleged fact is not corroborated by any evidence in the record other than Granger's own testimony. Given that the testimony is not corroborated by anyone despite the fact that Shepherd and Hayes were in the room, the veracity of the statement is in doubt. Moreover, Granger never reported Strom's alleged threat to anyone at Graybar before instituting this action.

them about "being threatened." Donahue suggested to Hayes and Shepherd that Strom be placed on corrective action for failing to follow her managers' directive-- both she and Granger were asked to leave the same area, Strom did not depart immediately, and thereby "potentially placed herself in danger with Mr. Granger already in the room in his agitated state." The first step of corrective action policy is "management counseling," Donahue did not contemplate taking any other action against Strom at that point. He did consider that Strom's conduct to Granger had some potential to be threatening. Shepherd and Hayes agreed with the decision to discipline Strom. No discipline was considered other than management consultation. Donahue does not know whether her management consultation included a discussion of her alleged conduct towards Granger on June 1, 2015. Donahue agrees that yelling at another employee violates Graybar's policy requiring employees to treat each other with dignity and respect and threats of violence and threatening gestures violate Graybar's workplace policy.

Other Instances of Swearing at Graybar

Strom has used the word "bitch" while working and Graybar employees do swear while working, some using the words "fuck" and "fucking". However, swearing is not a daily thing and the majority of the time that Strom uses such language it is directed at the computer, and when other employees swear, it is generally not at each other. Approximately a year before the June 2, 2015 incident, Granger got into an argument with another co-worker, Joseph Lamprey ("Lamprey"). That argument occurred in the warehouse. During the argument, both men raised their voices and Lamprey used the work "fuck." No discipline was imposed on either Lamprey or Granger and no documentation of the incident was placed in the Granger's personnel file. Additionally, noone ever reported the alleged incident to human resources or management.

<u>Granger's Termination</u>

On June 3, 2015, Granger was terminated as a result of the language that he had used when confronting Strom the previous day, specifically his repeated use of the word "bitch" in reference to Strom. At the time he was terminated, Granger was not told that his termination had anything to do with performance issues. Shepherd wrote in a memorandum dated June 3, 2015, that Granger had been terminated "based upon extremely inappropriate language and behavior directed at Kelly [Strom.]" Graybar also informed Equifax, a contractor that assists Graybar in processing unemployment claims, that the final incident for which Granger was terminated was "gross misconduct," and that his prior disciplinary history was not relevant. At the time of Granger's termination, there were no women in management positions in the Worcester branch, and Granger's former position in the Worcester branch has not filled with a woman.

**Standard of Review**

Federal Rule of Civil Procedure 56 provides that the court shall grant summary judgment if the moving party shows, based on the materials in the record, "that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A factual dispute precludes summary judgment if it is both "genuine" and "material." *See Anderson v. Liberty Lobby*, 477 U.S. 242, 247-48, 106 S.Ct. 2505 (1986). An issue is "genuine" when the evidence is such that a reasonable factfinder could resolve the point in favor of the non-moving party. *Morris v. Gov't Dev. Bank*, 27 F.3d 746, 748 (1st Cir. 1994). A fact is "material" when it might affect the outcome of the suit under the applicable law. *Id.*

The moving party is responsible for "identifying those portions [of the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548 (1968). It can meet this burden either by "offering evidence to

disprove an element of the plaintiff's case or by demonstrating an 'absence of evidence to support the non-moving party's case.'" *Rakes v. U.S.*, 352 F. Supp. 2d 47, 52 (D. Mass. 2005) (quoting *Celotex,* 477 U.S. at 4). Once the moving party shows the absence of any disputed material fact, the burden shifts to the non-moving party to place at least one material fact into dispute. *See Mendes v. Medtronic, Inc.,* 18 F.3d 13, 15 (1st Cir.1994) (discussing *Celotex*, 477 U.S. at 325). When ruling on a motion for summary judgment, "the court must view the facts in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor." *Scanlon v. Dep't of Army*, 277 F.3d 598, 600 (1st Cir. 2002). However, the court should not "credit bald assertions, empty conclusions, rank conjecture, or vitriolic invective." *Caban Hernandez v. Philip Morris USA, Inc.*, 486 F.3d 1, 8 (1st Cir. 2007).

### Discussion

Graybar seeks summary judgment on Granger's gender discrimination claim brought under Chapter 151B.  Specifically, Granger alleges that Graybar terminated him for inappropriate work place behavior while imposing minor discipline on a female co-worker for engaging in similar conduct.  Gender discrimination claims are governed by the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817 (1973), which although originally adopted for use in Title VII cases, also applies when evaluating discrimination claims under Chapter 151B. *See Jones v. Walgreen Co.*, 679 F.3d 9, 20-21 (1st Cir. 2012).

#### The McDonnell Douglas Framework; Plaintiff's Prima Facie Case

To establish a case of gender discrimination under Chapter 151B:

First, the plaintiff must show a prima facie case of employment discrimination. If the plaintiff succeeds, '[t]he burden then shifts to the defendant to present a legitimate, non-discriminatory reason, sufficient to raise a genuine issue of material fact as to whether it discriminated against the employee, for the

9

employment decision.' If the defendant provides such a reason, …the ball returns to the plaintiff's court, in which she must prove by a preponderance of the evidence that defendant's alleged nondiscriminatory reason was in fact a pretext for discrimination.

*Goncalves v. Plymouth Cty. Sheriff's Dep't*, 659 F.3d 101, 105 (1st Cir. 2011). To establish a prima facie case of gender discrimination under Chapter 151B, "a plaintiff must provide 'evidence that: (1) he … is a member of a class protected by [Chapter 151B]; (2) he… performed his … job at an acceptable level; [and] (3) he … was terminated. *Bulwer v. Mount Auburn Hosp.*, 473 Mass. 672, 681, 46 N.E.3d 24, 32–33 (2016).  It is undisputed that Granger has met the first and third prongs of his prima facie case.  Although there is a legitimate question as to whether Granger performed his job at an acceptable level, for purposes of this Order, I will assume that he did.  Accordingly, I will move on to the crux of the case, whether Graybar had legitimate reason for terminating Granger which was not a pretext for discrimination.

<u>Graybar's Reason for Terminating Granger's Employment</u>

On June 2, 2015, Granger initiated a confrontation with his female co-worker Strom in the breakroom of their place of employment.  Granger's stated reason for doing so was a perceived slight he felt at a discussion he had with Strom the day before which left him feeling "belittled." and insulted.  During the confrontation Granger yelled at Strom, on multiple occasions, calling her a "fucking bitch."  Granger continued to yell at Strom even though she indicated that she didn't want to talk to him and asked him to remove himself from the breakroom.  When Granger refused to disengage, Strom called Shepherd and Hayes who were in management positions.  Upon entering the breakroom, Hayes and Shepherd ordered Granger and Strom to leave. Strom began to leave, but reversed direction back towards Granger after he yelled a parting "fucking bitch" at her.  She was stopped by Hayes and Shepherd before she got to Granger. She shook her fist towards Granger and said to him "I am so mad I *could* punch you

in the fucking head."[2] (emphasis added)  After her progress was stopped by Hayes and Shepherd, she left the breakroom.  Granger did not immediately leave the breakroom, but ultimately complied with Hayes' and Shepherd's request to leave. Once he got into the warehouse, he stated to Shepherd and Hayes, that "she's a fucking bitch." It took Granger about five minutes to calm down.

Hayes and Shepherd interviewed both parties and Shepherd told Strom that their stories were essentially the same. Strom had told Shepherd that she had not made any threats towards Granger, that he had repeatedly called her a fucking bitch, and refused to leave her alone. Hayes and Shepherd consulted with Donahue and determined to fire Granger.  It is clear from the record that Granger was not a stellar employee.  While this was not a stated reason for his termination, it was something the decision makers knew. Nonetheless, I will assume for purposes of this discussion, that Graybar fired Granger solely as the result of his conduct towards Strom. That conduct consisted of him *initiating* the confrontation with Strom[3], escalating the confrontation by *repeatedly* yelling at Strom that she was a "fucking bitch," refusing to leave as requested by Strom, and continuing to yell that Strom was a "fucking bitch" in front of Hayes and Shepherd.  Granger was so angry that after the confrontation ended and he had left the breakroom, it took him 5 minutes to calm down. Granger's conduct violated *several* of Graybar's

---

[2] Granger relies heavily on the alleged fact that Strom swore and shook her fist at him to support his contention that he was treated differently than her. There is a question of fact as to whether Strom ever made this statement and/or shook her fist at Granger. Strom denied having done either, but more to the point, Hayes and Shepherd deny that she did so. Additionally, Granger did not report the alleged swearing/fist shaking when he told Hayes and Shepherd his version of events, nor did he ever report it to Donahue or anyone else at Graybar. Because I find that Granger's claim fails regardless of whether Strom swore at him while shaking her fist, I have assumed the asserted fact to be true.

[3] Granger's assertion that Strom actually started the confrontation is specious. First, Granger is the only source concerning the altercation which allegedly occurred between him and Strom on June 1, 2015. However, Granger has not provided any context concerning the alleged altercation. That is, he did not state what prompted the altercation, what was said or how it was said, *i.e.,* Strom's tone of voice and demeanor. His self-serving conclusory characterizations cannot create an issue of fact where none otherwise exists. Additionally, it is undisputed that Granger sought out Strom in the breakroom on June 2, 2015.

workplace policies.[4] Granger was aware of those policies and that his conduct violated them. Based on what only can be characterized as Granger's outrageous and unprofessional conduct, Graybar has proffered a legitimate, non-discriminatory reason for terminating Granger.

### *Whether Graybar's asserted reasons for Terminating Granger was Pretext*

Granger asserts that Graybar's asserted reason for terminating him was pretext, and that the real reason he was terminated is because of his gender—he is a male who got into an argument with a female. He contends that if the argument was between two males, he would not have been disciplined. He also alleges that he was treated differently than his female co-worker, Strom. Specifically, he points to the fact that Strom, who swore at him during the confrontation and shook her fist at him, was not terminated—indeed, Graybar did not even consider terminating her.

A protracted discussion is not warranted. First, Strom swore at Granger and shook her fist at him only *after* he had initiated a confrontation with her, *repeatedly* yelled at her that she was a "fucking bitch" and refused to stop talking to her when she asked him to. It is difficult to comprehend how Granger can equate Strom's statement that she was so mad she *could* punch him in the "fucking head" with his beyond the pale conduct, which included screaming at her and repeatedly referring to her as a "fucking bitch." Moreover, the fact that other workers at Graybar may swear during the work day by casually using epitaphs in their conversation does not support Granger's contention that he was treated differently because he was a male,

---

[4] That Granger's conduct violated Graybar's written work place policies is somewhat beside the point. In light of his conduct, it is difficult to comprehend that he would have been retained regardless of whether he violated any specific policy. I will also note that Granger does not contend that Graybar did not properly follow its policies and procedures in terminating him, he only argues that it did not apply those policies consistently when dealing with Strom.

particularly since the evidence was that it was both male and female workers who used such language.

Granger also points to a confrontation he had with his male co-worker, Lamprey, to support his claim that his termination was gender based. Granger's own account is that he and Lamprey had a loud argument on the warehouse floor. During the argument, both men raised their voices and Lamprey used the work "fuck." Neither Lamprey nor Granger were disciplined. Comparing this incident to Granger's June 2, 2015 confrontation with Strom is like comparing apples to oranges. Specifically, Lamprey's single use of an epitaph, which it is not clear was directed *at* Granger, simply cannot be equated to the conduct which led to Granger's termination, *i.e.*, his persistent and repeated yelling of "fucking bitch," directed at a co-worker. Additionally, there is no evidence in the record that this incident was overheard by anyone else at Graybar, or that it was reported to management or the human resources department. The June 2, 2015 incident was *witnessed* by Hayes and Shepherd *and* reported to the human resources department.[5]

It is not enough for a plaintiff to point to the simple fact that he was treated differently than a woman "[h]e must point to some evidence from which a jury could conclude that his termination was a sham intended to cover up the employer's real motive. Simply stated, [his claim fails where] he points [the court] to no evidence, beyond rhetoric and empty assertions, to suggest that if there was any differential treatment, 'gender was the reason for that difference. " *Perez v. Horizon Lines, Inc.,* 804 F.3d 1, 8 (1st Cir. 2015)(internal quotations, citations and citation to quoted case omitted). Granger has not come forth with a scintilla of evidence to

---

[5] According to Granger, the incident with Lamprey supports his contention that had Strom been a male, he would not have been terminated. He does not seem to appreciate the fact that evidence of a loud argument with a co-worker about a year before the June 2, 2015 confrontation only serves to emphasize that he and Strom, as to whom there is no evidence of any such prior incidents, were not similarly situated.

support his contention that the real reason that Graybar terminated him was because of his gender. Therefore, he has not met his burden of establishing that Granger's reason for terminating him was pretext and the real reason was gender based discrimination.

Granger contends that "[i]n this case, the record suggests that Graybar was enforcing traditional notions of civility, which more easily tolerate a man yelling profanities at another man or a woman making threats against a man than they do a man yelling profanity at a woman." *Pl's Opp. To Def.'s Mot. For Sum. J*. (Docket No. 27), at p. 17.  I disagree. The record suggests that this was a case of an out of control, angry employee who acted in a highly inappropriate and unprofessional manner toward a co-worker and was terminated for that conduct. Accordingly, summary judgment shall enter for Granger.

## Conclusion

Defendant's Motion For Summary Judgment (Docket No. 24) is ***granted***. Accordingly, Judgement shall enter for the Defendant.

**SO ORDERED.**

*/s/ Timothy S. Hillman*
**TIMOTHY S. HILLMAN**
**UNITED STATES DISTRICT JUDGE**